CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 15 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARK JORDAN, | Civil Action No. 7:10-cv-00491 |
| Petitioner, | |
| v. | **MEMORANDUM OPINION** |
| CHRISTOPHER ZYCH, | |
| | By: Samuel G. Wilson |
| Respondent. | United States District Judge |

This is a petition for writ of habeas corpus under 28 U.S.C. § 2241 by Mark Jordan, who was an inmate at the United States Penitentiary in Lee County, Virginia ("USP-Lee") at the time he filed this action, challenging a disciplinary action taken against him by the Bureau of Prisons. Jordan alleges that prison officials violated his rights under the Fifth Amendment's Due Process Clause and Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb, *et seq.*, during disciplinary proceedings that resulted in a finding that Jordan committed an assault on a fellow inmate. This matter is currently before the court on a motion by the respondent, Christopher Zych, the Warden at USP-Lee, to dismiss Jordan's petition. The court finds that Jordan has failed to demonstrate entitlement to relief under § 2241 for any of his claims, and therefore grants the respondent's motion.

I.

On July 10, 2010, Jordan observed a fight between two other prisoners, Kenneth Mills and Paul Weakley, in the prison yard at USP-Lee.[1] According to Jordan, after allegedly observing that Weakley was holding some sort of weapon in one of his hands, Jordan walked over to Weakley and placed his foot on Weakley's arm in an attempt to prevent him from using

---

[1] For the purposes of evaluating the respondent's motion to dismiss, the court takes Jordan's factual allegations as true and liberally construes his petition. See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980).

it. After briefly intervening, Jordan left the immediate scene and sat on a bench located elsewhere in the prison yard. Surveillance cameras recorded this entire sequence of events. Approximately two hours later, Carlton, a prison official, found Jordan and placed him in administrative detention.

The next day, after reviewing the surveillance video, Carlton prepared an incident report regarding Jordan's participation in the fight. The report stated that Carlton "observed Inmate Jordan . . . take his right foot and place it on Inmate Weakley['s] . . . arm and upper area, leaving Inmate Weakley . . . not able to defend his self at that time of the altercation." (Pet. Ex. 1.) The report charged Jordan with the offense of "assaulting any person," a violation of Offense Code 101 under 28 C.F.R. § 541.13. Jordan received a copy of this report that same day. Prison officials stayed disciplinary proceedings in the matter until July 14, when the United States Attorney's Office decided it would not pursue a possible criminal prosecution against Jordan.

On July 14, Jordan acknowledges he received another copy of the incident report, but denies that the officials ever gave Jordan the opportunity to make a statement regarding the charges.[2] Had Jordan been given the opportunity to make a statement at that time, he states that he would have reiterated the facts above and claimed that he only intervened to ensure Weakley did not stab Mills, and that he had no intent to assault either Weakley or Mills. (Pet. ¶¶ 6-7, 16.)

On July 16, the Unit Discipline Committee ("UDC") held an initial hearing on the matter. At the hearing, the UDC informed Jordan that he had the right to remain silent, but that any silence could potentially be used to draw an adverse inference against him. The UDC then gave him the opportunity to make a statement regarding the charges. Jordan simply told the UDC that he "did not assault anyone." Federal regulations provide that when a charged violation of prison rules is serious and warrants consideration of more than minor sanctions, the UDC shall refer the

---

[2] The prison officials claim they did give Jordan an opportunity to make a statement responding to the charges.

2

charge to a Disciplinary Hearing Officer ("DHO"). See 28 C.F.R. § 541.15(h). In Jordan's case, the UDC found that the charged violation potentially warranted more than minor sanctions, and referred the matter to a DHO. As part of his referral, the UDC recommended that the DHO impose a loss of 41 days of good conduct time, as well as the loss of commissary privileges for 180 days.

At a hearing before a DHO, an inmate is entitled to make a statement, present documentary evidence, and call witnesses to testify on his behalf. 28 C.F.R. § 541.17(c). The inmate is also entitled to request that a staff representative be appointed to appear on the inmate's behalf. 28 C.F.R. § 541.15(i). Before the hearing, Jordan elected to exercise his right to have a staff representative appointed, and requested that three witnesses testify at his hearing. Jordan selected Lance Cole, the Education Department Supervisor at USP-Lee, to serve as his staff representative. Jordan's DHO hearing took place on July 27, 2010. Lieutenant Ted Trees, the Alternate DHO at USP-Lee, acted as the DHO for the hearing.

Trees began the hearing by advising Jordan of his rights. When asked to respond to the charges contained in the incident report, Jordan replied: "Everything is true. I walked up to Weakley because he had a knife. I put my foot on his arm, wanting Mills to break away. I wasn't trying to assault anyone." (Resp. Ex. 1, Attach. 2, Part V.) Jordan contended that his actions did not leave Weakley unable to defend himself, and reiterated that his only intent was to break up the fight and prevent Mills from being seriously injured. As the material facts were not in dispute, Jordan agreed to waive his right to have his three witnesses appear. Jordan claims that he asked Trees to review the video surveillance tapes of the incident personally, and that Trees declined. Instead, Trees allowed Cole, who had viewed the tapes, to testify regarding their content and agreed to credit his testimony. Jordan states that Cole's testimony was consistent

3

with the events chronicled in the incident report, except that Cole noted that Jordan did not immediately leave the scene after Mills and Weakley left.

After hearing the testimony and reviewing the evidence, Trees found that Jordan had not violated Code 101, as charged in the incident report, but instead had violated Code 224, "Assaulting Without Serious Injury." In arriving at this conclusion, Trees considered the testimony of Jordan and Cole, the incident report, as well as a memorandum prepared by Lieutenant E. Allen describing the incident. Trees noted that it was uncontested that Jordan had freely chosen to intervene in the armed conflict between Weakley and Mills by placing his foot on Weakley, preventing him from moving, and that this action constituted the "unwanted touching of another." (Resp. Ex. 1, Attach. 2, Part V.) Trees agreed with the reporting officer that this action left Weakley unable to defend himself, and that Jordan's statement that his only intention in intervening was to help Mills break free lacked credibility. Trees also noted that Jordan's decision to leave the immediate area without reporting the incident to prison officials demonstrated that Jordan was aware that his actions had been wrongful. Trees found that Jordan had presented no evidence that would indicate that prison officials had "conspired" to charge him with this offense.

As a result of these findings, Trees sanctioned Jordan by disallowing him 27 days of Good Conduct Time, imposed 15 days of disciplinary segregation (suspended for 90 days), and suspended his visiting privileges for 120 days. In imposing these sanctions, Trees emphasized that inmates who attempt to intervene in an assault increase the chance that a larger disturbance may break out, and therefore threaten the safety and security of both inmates and prison officials. Trees issued his written report detailing these findings on August 18, 2010, and Jordan received a copy of the report on September 24, 2010. Jordan challenged the decision through the

administrative procedures available to him, and exhausted those potential remedies prior to bringing suit.

Jordan now brings 20 claims that prison officials violated his due process rights in a variety of ways during their investigation of the incident and their conduct during Jordan's DHO hearing. Jordan also brings an additional claim under RFRA alleging that he is an observant practitioner of Judaism and was compelled by his religious views to act to prevent a violent physical assault, and that the prison's disciplinary proceedings have substantially burdened his ability to practice his religion in this manner.

## II.

Jordan's petition raises numerous claims that prison officials failed to provide him with the minimum due process required by the Fifth Amendment in depriving him of his good time credits. For the reasons set forth below, the court finds his claims without merit and dismisses them.

Where a prison disciplinary hearing may result in the loss of good time credits, due process requires that an inmate receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). In order to comply with the minimum requirements of procedural due process, the findings of a prison disciplinary board must be supported by some evidence in the record, Hill, 472 U.S. at 454-55, and be made by an impartial adjudicator. Wolff, 418 U.S. at 570-71.

The record indicates that the prison officials provided Jordan with all of the process he was due under the Fifth Amendment. Jordan received a copy of the incident report on July 11, detailing the charges against him. Jordan received another copy on July 14, and did not have his initial hearing on the matter until July 16. Jordan's DHO hearing did not take place until July 27, more than two weeks after he first received notice of the charges. The DHO and other prison officials notified Jordan of his right to present evidence and call witnesses at his hearing. When it became clear that neither side contested the basic facts of the case – that Jordan intervened in the confrontation between inmates Mills and Weakley by placing his foot on Weakley's arm in order to prevent Weakley from further engaging Mills – Jordan agreed to waive his right to call his witnesses. The DHO then made his findings and issued a written report explaining his decision to convict Jordan of the assault charge. Jordan received a copy of this report on September 24, 2010. Thus, Jordan received advanced written notice, an opportunity to present evidence and call witnesses, and a written finding from the DHO notifying him of the evidence relied upon to convict him of the charge, as required by the Due Process Clause.

Jordan's claims relating to the sufficiency of the evidence relied upon to convict him of the minor assault charge must also fail. The DHO's findings were based primarily upon facts that neither party contested, namely that Jordan intervened in a fight between two other inmates by placing his foot on one of the inmates. Jordan insists that he did not intend to assault anyone, and that he only wanted to prevent Weakley from harming Mills. However, it is axiomatic that Jordan's act of pinning Weakley's arm during Weakley's fight with Mills would have diminished Weakley's ability to defend himself or otherwise continue fighting, and that such touching would be unwanted from Weakley's perspective. Jordan's own testimony as to what

occurred therefore provided at least "some evidence" on which the DHO could reasonably base his finding that Jordan committed a Code 224 assault.[3]

Jordan's claim that Trees presided over his hearing in a biased manner also lacks merit. Jordan alleges that various prison officials arranged to have his case adjudicated by Trees, who conspired with these officials to convict Jordan of the institutional charges in order to justify transferring Jordan to another penitentiary. However, Jordan does not provide any factual basis for these claims, and the court finds nothing in Trees' DHO report that even remotely suggests any impropriety on his part.

For these reasons, the court finds Jordan's due process claims[4] lack merit and dismisses them.

### III.

Jordan urges the court to vacate the DHO's decision because he claims prison officials also infringed his due process rights by violating several federal regulations that set forth the procedures governing disciplinary investigations and proceedings. Specifically, Jordan challenges whether prison officials properly appointed Trees to hear the case, and whether those officials followed the appropriate procedures for notifying Jordan of the investigation and providing him with a copy of Trees' report. The court finds that because prison officials provided Jordan with the all of the process required under Hill and Wolff, his additional claims based on these regulations must be dismissed. Further, even if Jordan had a due process right to

---

[3] Jordan also claims that Code 224 is impermissibly vague as applied to him, as he had no notice that his action of placing his foot on Weakley during a fight would constitute "unwanted touching." A prison regulation is impermissibly vague if it fails to "apprise any inmate of ordinary intelligence" that a particular act is "forbidden." Gaston v. Taylor, 946 F.2d 340, 342 (4th Cir. 1991); see also United States v. Chatman, 538 F.2d 567, 569 (4th Cir. 1976 (noting that courts must bear in mind the "unique environment" in which prison regulations are designed to operate when evaluating challenges based on the void-for-vagueness doctrine). The court finds that a reasonable person would have known that the unsolicited contact here was "unwanted."

[4] These claims include those numbered 1-9, 11, and 20 in Jordan's petition.

7

the additional procedures provided for by the Bureau of Prisons, the court finds that prison officials either complied with these regulations or that their failure to do so was harmless error in Jordan's case. Accordingly, the court dismisses Jordan's claims.

"[S]o long as a disciplinary hearing comports with the requirements of Wolff, a prison does not violate the Due Process Clause by failing to follow its own procedures which 'rise above the floor set by the due process clause.'" Parker v. Conner, 66 F.3d 335, 1995 WL 536306, at *1 (9th Cir. Sept. 8, 1995) (quoting Walker v. Sumner, 14 F.3d 1415, 1419 (9th Cir. 1994)); see also Colon v. Williamson, 319 Fed. App'x 191, 193 n.3 (3d Cir. 2009); Saenz-Lopez v. Bureau of Prisons, 2000 WL 1039323, at *2 (7th Cir. July 25, 2000); Rogers v. Okin, 738 F.2d 1, 8 (1st Cir. 1984). Even if a prison official's actions create a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief. Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004).

Jordan argues that Trees was not USP-Lee's primary DHO and thus should never have presided over his disciplinary hearing, and that his appointment violated 28 C.F.R. § 541.16. This regulation provides that "[i]f the institution's DHO is not able to conduct hearings, the Warden shall arrange for another DHO to conduct the hearings. This person must be trained and certified as a DHO, and meet the other requirements for DHO." 28 C.F.R. § 541.16(a). Here, Trees has submitted an uncontested affidavit indicating that he met the Bureau of Prison's DHO training and certification requirements. More importantly, Jordan has not plausibly shown that Trees' acted in a biased manner while presiding over Jordan's disciplinary proceedings in violation of Wolff's requirement that disciplinary decisions be made by an impartial adjudicator. Thus, Jordan's allegation that Trees did not meet the minimum qualifications to sit as a DHO raises no constitutional concerns.

Jordan claims prison officials violated their own procedural requirements in two other ways. First, he alleges prison officials failed to comply with 28 C.F.R. § 541.14(b)(2), which provides that an investigating officer shall deliver a copy of an incident report to the inmate being investigated at the beginning of an investigation, at which time the officer must "advise the inmate of the right to remain silent at all stages of the disciplinary process but that the inmate's silence may be used to draw an adverse inference against the inmate at any stage of the institutional disciplinary process." While the prison officials maintain that they advised Jordan of these rights when they delivered a copy of the incident report to him on July 14, 2010, Jordan denies that they did so. However, Jordan did receive notification of these rights in writing at his initial UDC hearing on July 16, and at that hearing Jordan's recitation of the events in question did not differ materially from those described in the incident report. Trees' final DHO report does not suggest that he drew an adverse inference from Jordan's alleged silence on July 14. Thus, any procedural error on the part of the prison officials was harmless and did not rise to the level of an actionable due process claim. See Brown, 373 F.3d at 508 (finding a potential due process violation harmless when a habeas petitioner could not articulate how the procedural violation in question negatively impacted him).

Second, Jordan claims that he did not receive a copy of the written DHO report in a timely manner as required by 28 C.F.R. § 541.17(g), which states that prison officials should "ordinarily" deliver the report to the affected inmate within ten days. However, even if a prisoner does not receive a DHO report within the prescribed timeframe, this delay does not provide a basis for habeas relief so long as the delay has no prejudicial effect on the inmate's administrate appeal. Cook v. Warden, 241 Fed. App'x 828, 829 (3d Cir. 2007). Here, Trees issued his report on August 18, 2010, and Jordan did not receive it until September 24, 2010.

9

Jordan does not claim that this delay had any prejudicial effect on his administrative appeal, and therefore the court must dismiss this claim as well.

For the reasons stated above, the court denies Jordan's claims relating to the alleged violations of federal procedural regulations.[5]

## IV.

Jordan's petition alleges that, as an "observant practitioner of Judaism" he is "compelled to prevent violent physical assault . . . where opportunity arises and he is in a position to do so," (Pet. at 18) and that prison officials' decision to discipline him for his intervention in the fight between Weakley and Mills constituted an impermissible burden on the exercise of his religion in violation of RFRA.[6] RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," 42 U.S.C. § 2000bb-1(a), unless it demonstrates that, the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." Id. § 2000bb-1(b). Even if the Bureau of Prisons' regulations substantially burdened the exercise of Jordan's religious beliefs, the government clearly has a compelling interest in preventing fighting in prison, and its rules preventing an inmate from joining in an ongoing melee, even if the inmate does so with the intention of stopping the fight, are the least restrictive means of accomplishing this interest. Accordingly, the court dismisses Jordan's RFRA claim.

## V.

---

[5] For the reasons discussed in Part II, the court also denies Jordan's claims that prison officials violated federal regulations by refusing to allow him to present witnesses (Claim 15), failing to provide him with an impartial decision-maker (Claim 16), and by the DHO's failure to adequately support his findings (Claims 16-17, 19).

[6] While the Supreme Court held that RFRA was unconstitutional as applied to state governments and agencies in City of Boerne v. Flores, 521 U.S. 507 (1997), RFRA continues to govern the activities of federal officers and agencies. Madison v. Riter, 355 F.3d 310, 315 (4th Cir. 2003).

Jordan has moved to supplement the record with copies of emails sent by Trees that Jordan believes support his claim that Trees violated his due process rights by exhibiting bias against him in making his ruling. These emails consist of a request to other prison officials for clarification regarding the content of the surveillance video that captured the incident at issue, and an early draft of Trees' final DHO report. The court has reviewed these additional materials, and finds nothing to indicate Trees was not an impartial decision-maker. First of all, a DHO's decision not to review surveillance video himself does not constitute a due process violation. Neal v. Casterline, 129 Fed. App'x 113, 115 (5th Cir. 2005). Further, nothing in the draft version of the DHO report indicates that Trees had "false evidence created to support the finding and conviction," or failed to otherwise act as an impartial fact finder. (Pet'r's Mot. to Supplement at 3-4.) The primary difference between the draft and the final version appears to be that, in the early version, Trees states that Jordan may not have witnessed the beginning of the confrontation between Mills and Weakley, while in the final version Trees does not speculate on whether Jordan saw who started the fight. In both versions, however, Trees concludes that Jordan's acted impermissibly regardless of how the fight began. The final version does not purport to rely on any "newly-created" evidence or contradict the draft version in any material way. Thus, the court finds that Jordan's proposed supplemental evidence fails to create a factual issue as to whether Trees violated Jordan's due process rights.

## VI.

Jordan has moved to transfer this case to the U.S. District Court for the Middle District of Pennsylvania, arguing that this court may no longer have jurisdiction to hear the case because Jordan has been transferred from USP-Lee to another penitentiary in that district. However, because Jordan was incarcerated within this district at the time he filed his petition, the court

11

retains jurisdiction to review his petition. See United States v. Gabor, 905 F.2d 76, 78 (5th Cir. 1990) ("To entertain a § 2241 habeas petition, the district court must, *upon the filing of the petition*, have jurisdiction over the prisoner or his custodian." (emphasis added)); Forrester v. Garraghty, 2002 WL 32862999, at *3 (E.D. Va. 2002). Accordingly, the court denies Jordan's motion to transfer.

## VII.

For the reasons stated above, the court dismisses Jordan's habeas petition and denies his motion to transfer.

**ENTER:** June 15, 2011.

_____
UNITED STATES DISTRICT JUDGE